other on the West side. The plaintiff took the defendant's car on Lexington avenue going north, and on paying his fare asked for a transfer ticket that would take him to the said point he was going to. The conductor said he could not give it to him, but gave him a transfer ticket to go west on the cars on 116th street to Columbus avenue. The plaintiff took a car west on that street and on giving the conductor the transfer ticket for his fare asked him for a transfer ticket south on a Columbus avenue car to his said place of destination, viz., the corner of the said avenue and 93rd street, but it was refused him. He took a Columbus avenue car south, and was obliged to pay another fare. The defendant claims that as the plaintiff started north at the beginning, he was not entitled to a transfer ticket to go south at any stage of his journey—that the transfers must all be in the same general direction as the start, and that while he could have had a transfer north on Columbus avenue he was not entitled to one south. There is no such limitation in the statute. The plaintiff could not get from his starting point to his destination except by going as he did north, then west, then south by Columbus avenue, unless he first went south, then west by 59th street, then north by Columbus avenue. Either of these was his direct way to get from the one point to the other. The statute requires a village or city street railroad company to carry a passenger on a continuous trip "between any two points" on its road, or any connecting roads or lines operated or controlled by it, for one fare, and to give a transfer to the passenger entitling him to make the trip. That means across town as well as through town.

The judgment should be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.

---

## CAUSULLO v. LENOX CONST. CO.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

1. DEATH—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PROOF.

While less evidence will suffice to show lack of contributory negligence in actions for wrongful death, the plaintiff is not relieved of the burden of showing that defendant was negligent in the performance of some duty which it owed to deceased by a fair preponderance of the evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, § 78.]

2. MASTER AND SERVANT—DEATH OF SERVANT—WARNING—EVIDENCE.

In an action, for the death of a servant while working on a subway by contact with a dangerous electric rail, evidence *held* insufficient to warrant a finding that defendant was negligent in failing to warn deceased of the danger.

3. EVIDENCE—WEIGHT.

In an action for death of a servant by coming in contact with an electric rail, evidence of an employé on the same work who was not shown to have ever seen deceased, except on the day of the accident, that he did not hear any instructions given deceased on that day, and had never heard deceased warned of the danger of contact with the rail, was without probative force.

Appeal from Trial Term.

Action by Francesco Causullo, administrator of the estate of Carmine Pitzzulo, deceased, against the Lenox Construction Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial on the minutes, defendant appeals. Reversed, and new trial ordered.

See 94 N. Y. Supp. 639.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

Frank V. Johnson, for appellant.
Thomas J. O'Neill, for respondent.

LAMBERT, J. The defendant, a domestic corporation, was engaged in doing certain work in connection with the construction of the subway on Lenox avenue. Plaintiff's intestate was one of the laborers employed, engaged in mixing and delivering to the bricklayers and others concrete upon the work, which was being placed over the roof of the subway and under the tracks of the surface railroad, operated by a third rail beneath the surface. Plaintiff's intestate came in contact with this third rail highly charged with electricity, and his death resulted. The complaint charged that the injuries resulting in death were caused by the negligence of the defendant in its failure to supply the deceased with "a suitable and proper place within which to do his work, and that the place where the deceased was directed and obliged to do his work was dangerous, unprotected, unsafe and unguarded, and through its failure to supply the deceased with competent and suitable foreman to guide, guard, and direct deceased in his work, by reason of which he was struck by an electric wire or current." A notice under the employer's liability act (Laws 1902, p. 1748, c. 600) was served; but it was found to be defective, and was not admitted in evidence, so that we have merely a common-law action for negligence, and no claim appears to have been seriously made upon the trial that the defendant failed in providing as safe a place in which to perform this labor as the circumstances of the case permitted; so that the real issue presented was whether the plaintiff's intestate was such an inexperienced or "green" workman that it became the duty of the defendant to give him instructions or warnings. That was the theory on which the case went to the jury, and the only questions necessary to determine here are whether the evidence justified the finding that the defendant was negligent in this respect, and whether the plaintiff has shown his intestate to be free from negligence contributing to the result.

It has been held that in cases where the accident results in death less evidence will suffice to show lack of contributory negligence; but we know of no rule which relieves the plaintiff of the duty of showing that the defendant has neglected some duty which it owed to the deceased by a fair preponderance of evidence under any circumstances; and, tried by this test, we are of the opinion that the judgment and order appealed from should be reversed, as being against the weight of evidence. The theory being that the deceased was a "green"

man, sent into a dangerous situation, the plaintiff called as a witness one Yost, a bricklayer, and he was asked if he had ever seen the deceased working in the conduit on any other day before the day of the accident, and he answered in the negative. The same witness also testified that he did not hear any instructions given to the deceased on the day of the accident, and that he had never heard the deceased warned of the danger of contact with the third rail. This is all the testimony in the case, so far as we are able to discover—and the respondent does not call attention to any other—which even suggests that there was a neglect of duty on the part of the defendant to warn him of his danger. This is clearly insufficient to show that the defendant had failed in its duty; for the testimony of one man, who does not appear to have been present at all times, that he has not heard such warning, is clearly of no probative force. So far as Yost's testimony goes, it does not appear that he ever saw the deceased except on the day of the accident, though it clearly appears from the evidence of various witnesses that he was employed at least two months in the capacity of a common laborer, mixing concrete, carrying the same to others, and doing all kinds of coarse work about the construction. On the part of the defendant, Roberts, the foreman of the bricklayers, testified that he sent the deceased to help the bricklayers, and that:

"I told him to look out for the third rail, that it was dangerous, and he would be likely to be killed. He says, 'Me watch, me work at this place longa time.' * * * Five minutes before he was killed I was down in the hole, and he was joking with the bricklayers for whom he was dumping stuff, and I caught him with his head very close to the rail; and I got him by the shoulder and partly dragged him down, and I said to him, 'Look out! You bye and bye in the box.' And he said: 'Me watch; me no afraid; me watch; me work at this place longa time.'"

The general foreman, Sinclair, testified that he had seen the deceased doing this kind of work; that he had been there from six weeks to two months. Munroe, the foreman of the Italian laborers, testified that the deceased had been in his gang for a week doing this kind of work; that in doing it they had to work about the third rail, and that he warned the decedent of the dangers of this third rail. One San Giovanni, an Italian laborer, testified that he had known the deceased for seven months; that they had worked together on this particular work, where the third rail was exposed for six weeks or more, and that their work was all about the place; and that he heard the foreman warn the deceased and others every day in reference to the third rail. He likewise testified that he personally warned the deceased just before the accident, and that the deceased responded that he was not drunk. Capo Bianco, another foreman, testified that the deceased had worked in his gang five or six months doing this general work in and around the construction of the subway; that he worked in under these tracks; that he had talked with the deceased every morning about the danger of the third rail; that he had schooled him; that he had himself come into close contact—touching his hat—with the third rail in the presence of the deceased, and that he had made this the occasion of a warning.

107 N.Y.S.—28

There is no proof to contradict this array of evidence to show that the deceased had ample warning; that he knew as well as the defendant might be presumed to know; that he was working where he was exposed to the dangers of this third rail, and there was therefore no reasonable justification for the jury to find that the defendant had negligently exposed him to dangers, without giving him warning. It is not necessary to show that the defendant, through its officers, called decedent's attention to the danger. It is for the plaintiff to show that there was a neglect of duty on the part of the defendant, and the evidence not only fails to show this, but it is overwhelming that the deceased knew the situation and the danger to be apprehended, and he must be deemed to have accepted the risk of the employment.

Because the verdict is against the weight of evidence the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur. HOUGHTON, J., in result.